1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVISION

CHARLENE GORDON,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No.  19-cv-03040-RMI

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 20

Plaintiff, Charlene Gordon, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 8 & 9), and both parties have moved for summary judgment (dkts. 17 & 20). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and direct courts in their review of

United States District Court
Northern District of California

1  factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

2  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

3  adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

4  197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

5  determining whether the Commissioner's findings are supported by substantial evidence," a

6  district court must review the administrative record as a whole, considering "both the evidence

7  that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.

8  Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

9  evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

10  679 (9th Cir. 2005).

### PROCEDURAL HISTORY

12  In October of 2015, Plaintiff filed applications for disability insurance benefits and

13  supplemental security income, alleging an onset date of January 31, 2010, as to both applications.

14  *See* Administrative Record "*AR*" at 20.[1] The ALJ denied the applications on July 13, 2018. *Id*. at

15  36. The Appeals Council denied Plaintiff's request for review on April 25, 2019. *See id*. at 1, 6-8.

### SUMMARY OF THE RELEVANT EVIDENCE

17  Plaintiff is a former office manager in her mid-50s who suffers from various physical

18  ailments. *See* Pl.'s Mot. (dkt. 17) at 4. The ALJ found that Plaintiff suffered from a series of

19  severe impairments including chronic kidney disease at stage II, obesity, osteoarthritis in both

20  knees, degenerative changes in her lumbar spine and both hips, and carpal tunnel syndrome. *AR* at

21  23. In formulating the RFC, the ALJ made no significant allowance for Plaintiff's carpal tunnel

22  syndrome and specifically found that Plaintiff experiences no limits in reaching, handling or

23  fingering with the right upper extremity, and that she has no limits at all with the left upper

24  extremity. *Id*. at 26. Ultimately, the ALJ found that Plaintiff was able to make full use of the

25  computer keyboard and thus found that Plaintiff was able to work in the capacity of a clerical

26  assistant or a reception clerk. *Id*. at 35. Accordingly, the following is a summary of the evidence

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #14. *See* (dkts. 14-1 through 14-19).

1    that is relevant to Plaintiff's carpel tunnel syndrome ("CTS") and its associated limitations.

2    ***Medical Evidence***

3        As early as 15 years before her application, Plaintiff had been diagnosed with CTS by an

4    orthopedist, Dr. Steiner, who had opined that Plaintiff's condition precluded her from "forceful

5    grasping, torqueing, and repetitive manipulation of both hands equally," for which "[s]he was

6    given cock-up splints to use on an as-needed basis." *Id*. at 1019. More recently, on July 29, 2014,

7    Plaintiff was treated by Grace Lat, M.D., at the Alameda Health System in Oakland, California. *Id*.

8    at 780-85. Dr. Lat noted Plaintiff's weak grip in her right hand, as well as noting that Plaintiff is

9    right-handed. *Id*. at 780. Dr. Lat found that Plaintiff's carpel tunnel syndrome prevented her from

10   performing certain lifting and twisting actions with her hands, or from using the computer or

11   typing. *Id*. Plaintiff was instructed by Dr. Lat to always use her cock-up wrist supports (a type of

12   brace that serves to immobilize the wrist). *Id*. Dr. Lat also noted that Plaintiff was first diagnosed

13   with CTS in 1999. *Id*. While Plaintiff was diagnosed with CTS in both wrists, Dr. Lat noted that

14   the pain was worse in the right wrist. *Id*. at 795-800. Due to the lack of improvement, in

15   November of 2015, Dr. Lat eventually referred Plaintiff to an orthopedic specialist for evaluation

16   and treatment of her persistent CTS. *Id*. at 1011.

17       In 2015, her orthopedist found her wrists were tender in response to palpation;

18   consequently, Plaintiff was referred for x-ray imaging of her wrists. *Id*. at 1020. In the course of a

19   consultative internal medicine evaluation by Eugene McMillan, M.D., Plaintiff was found to have

20   "some limitation with using her right hand for pushing and pulling and gross manipulation." *Id*. at

21   1036. A few months later, Plaintiff's physical therapist noted that due to Plaintiff's inability to

22   give her hands rest from overuse, and despite her "excellent attendance" at physical therapy,

23   Plaintiff would benefit from continued treatment by her orthopedic specialist in order to reassess

24   the condition of her wrists. *Id*. at 1103. In any event, in late December of 2015, Plaintiff's treating

25   physician, Michael Krosin, M.D., noted that her wrists were still tender to palpation, and noted

26   "that she feels numbness and tingling in both hands, and at times weakness of the hands . . . [and]

27   [s]he also has pain over both wrists." *Id*. at 1279-80. The existence of Plaintiff's wrist pain was

28   confirmed again during an early 2016 evaluation by Dr. Krosin's colleague, Jorge Kim, M.D.,

United States District Court
Northern District of California

who performed a Tinel's sign examination – a method by which irritated nerves are identified by lightly percussing an area to elicit a sensation of tingling which is sometimes referred to as "pins and needles." *Id*. at 1285.

In early January of 2016, x-ray images of Plaintiff's wrists were interpreted by her treating radiologist, Talitha Travis, M.D., and it was noted that Plaintiff had experienced some mild "degenerative changes at the base of the first metacarpal" in both hands, particularly in the scaphoid bone (which is one of the eight small bones that make up the carpal bones of the wrist). *Id*. at 1282. A few weeks later, in late January of 2016, Plaintiff underwent electromyography and nerve conduction testing at the Neurology Department of Alameda Health Services by Michael Gibbs, M.D., which confirmed Dr. Lat's previous diagnosis of CTS in both wrists. *Id*. at 1014. The nerve conduction testing revealed that Plaintiff's CTS manifested itself as such: "median sensory and motor neuropathy at the wrists [] of moderate severity." *Id*. at 1014, 1246. In both wrists, Plaintiff's median motor nerves, "showed prolonged distal onset latency," Plaintiff's sensory nerves, "showed prolonged distal peak latency," and her right median sensory nerve also "showed a reduced amplitude." *Id*. at 1246, 1283.

Throughout 2016, Dr. Krosin repeatedly noted that the pain and weakness Plaintiff experienced in both wrists was rooted in the median sensory and motor neuropathy in both wrists, for which, he discussed several options including nerve injections, surgical intervention at the Highland Hand Clinic, and physical therapy. *Id*. at 1288, 1292. Eventually, in October of 2016, Plaintiff was given another physical therapy referral for her wrists. *Id*. at 1292-93. That same month, because Plaintiff was also "contemplating total knee arthroplasty" (also known as knee replacement surgery), Dr. Krosin once again prescribed cock-up splints for the immobilization of both of Plaintiff's hands. *Id*. at 1327-28. Two months later, in December of 2016, Plaintiff was assessed as continuing to demonstrate stiffness in both wrists due to stiff joints and tight muscles, and she was encouraged to make greater use of the immobilizing wrist braces. *Id*. at 1106. Due to the fact that her wrist splints immobilize her hands, rendering them of limited usefulness, Plaintiff's physical therapist specifically encouraged her "to recruit family members to help with her cooking responsibilities to limit pain in [her] wrist." *Id*. at 1107.

United States District Court
Northern District of California

In January of 2017, Dr. Krosin noted again that Plaintiff continued to have ongoing pain in both hands; specifically, he found that Plaintiff has diffuse pain in her wrists, as well as in the dorsum of both hands. *Id.* at 1344-45. He also observed that Plaintiff's hand strength was steadily diminishing over time. *Id.* at 1344, 1349. In April of 2017, Dr. Krosin found that Plaintiff continued to experience worsening numbness and tingling in the hands, noting that her hand strength was continuing to diminish. *Id.* at 1349. Throughout 2017, Plaintiff's wrists were treated with immobilizing splints, pain medications, and occasional injections directly into the wrists. *See id.* at 1350, 1353, 1360, 1367.

### ***Hearing Testimony***

In January of 2018, Plaintiff appeared for a hearing before the ALJ. *See AR* at 44-90. In pertinent part, Plaintiff testified that her most recent employment was as an office manager between 1999 and 2010, and involved functions such as typing, ordering supplies, and various other general administrative and bookkeeping functions. *Id.* at 51-53. In 2010, Plaintiff was laid off from that position due to downsizing, and in 2014, became unable to work any longer due to the onset of knee pain, back pain, and osteoarthritis, all of which she reduced to the following expression: "chronic constant pain every day." *Id.* at 54-56, 58. Plaintiff also related that her doctors want to perform knee replacement surgeries on both knees, "because of the arthritis is so bad," but that she has "been putting it off for the last past two years," noting that, "I'm kind of scared." *Id.* at 63. When the ALJ asked Plaintiff if her physicians intended to operate on her spine, Plaintiff related that they were planning a series of spinal injections when it was discovered that she had developed renal masses in both kidneys (quite apart from her stage II kidney disease) that needed to be surgically removed first in order to determine if they were malignant. *Id.* at 64-65. Plaintiff stated that she was scheduled for kidney surgery the following month, adding once again: "I'm so scared." *Id.*

As to Plaintiff's wrist and hand pain, she stated that she wears the immobilizing braces as often as possible, because it helps ease the pain when her wrists are in a stable position. *Id.* at 65-66. Plaintiff even wears the braces when riding the bus "because sometimes you're on the bus, your hands just flop and you don't have anything to do with them, and I don't want nothing to

aggravate it - - or something, so I just wear them like that." *Id*. at 66-67. When asked if she is able to do her own shopping or to lift grocery packages and bags, Plaintiff responded in the negative and stated that, for this reason, she generally recruits the help of family members. *Id*. at 69. When the ALJ asked Plaintiff if eating aggravates her wrist pain, Plaintiff responded "I mean, it bothers me, but I'm going to eat anyway." *Id*. at 69-70. In responding to the ALJ's inquiry about her ability to lift and carry things, Plaintiff stated that she is unable to even lift a baby, so lifting anything heavier than a baby would involve too much pain. *Id*. at 73-74. Plaintiff then testified that she is unable to do much of anything with her left hand, that her right hand is even worse than the left, and that the condition of both of her hands is progressively worsening. *Id*. at 75-76. Finally, in pertinent part, Plaintiff's counsel asked the VE, "[i]f a person were to be limited to less than occasional use of the right upper extremity for fine and gross manipulation, and I'd be (sic) using the hand, would that preclude all employment?" *Id*. at 89. The VE answered in the affirmative. *Id*. Given that Plaintiff testified that she was right-handed (*id*. at 75), the ALJ asked the VE to clarify whether the work-preclusive opinion just rendered would assume that the person described in counsel's hypothetical was right-handed; to which, the VE responded in the affirmative. *Id*. at 89.

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

United States District Court
Northern District of California

1    Here, the ALJ set forth the applicable law under the required five-step sequential

2  evaluation process. *AR* at 22-23. At Step One, the claimant bears the burden of showing she has

3  not been engaged in "substantial gainful activity" since the alleged date the claimant became

4  disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be

5  substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that

6  Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* at 23. At

7  Step Two, the claimant bears the burden of showing that she has a medically severe impairment or

8  combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe

9  if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than

10  a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686

11  (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from

12  the following severe impairments: osteoarthritis in both knees, degenerative changes in the lumbar

13  spine and in both hips, carpal tunnel syndrome, chronic kidney disease at stage II, and obesity with

14  substantial weight loss during the period at issue. *AR* at 23.

15    At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

16  appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

17  burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant

18  is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful,

19  the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.

20  *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or

21  combination of impairments that met or medically equaled the severity of any of the listed

22  impairments. *AR* at 24-26. Next, the ALJ determined that Plaintiff retained the RFC to perform

23  work at the light exertional level but with a series of limitations including finding, in pertinent

24  part, that Plaintiff can lift and carry 20 pounds occasionally, that she can lift 10 pounds frequently,

25  that she can occasionally push and pull with her right hand, that she has no limits as to reaching in

26  all directions, that she can frequently user her right hand for handling, that she has no limits as to

27  reaching, handling, or fingering with her right hand, and that she has no limits at all with her left

28  hand. *Id*. at 26-33.

1    At Step Four, the ALJ determined that Plaintiff is unable to perform her past relevant work

2    as an office manager. *Id*. at 33-34. Lastly, at Step Five, the ALJ concluded that based on the RFC,

3    Plaintiff's age, education, and work experience, and after consulting with the VE, that there are

4    jobs that exist in significant numbers which Plaintiff can still perform – namely, the ALJ found

5    that Plaintiff could perform the functions of a clerical assistant or a reception clerk. *Id*. at 34-35.

6    Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the

7    Social Security Act, from December 28, 2014 (the amended alleged onset date), through the date

8    of the issuance of the ALJ's decision, July 13, 2018. *Id*. at 35-36.

## DISCUSSION

10    Plaintiff presents three assertions of error and contends that the case is due to be remanded

11    for the following reasons: (1) the failure to identify Plaintiff's transferable skills in the decision;

12    (2) the ALJ's findings regarding Plaintiff's transferable skills contradict Plaintiff's RFC; and, (3)

13    the ALJ failed to provide any explanation as to how Plaintiff's skills are transferable to a clerical

14    position in light of her carpal tunnel syndrome. *See* Pl.'s Mot. (dkt. 17) at 15-16, 17-19. Lastly,

15    Plaintiff contends that the court should reverse the Commissioner's determination and remand the

16    case for an immediate award of benefits because the record leaves no room for any serious doubt

17    that Plaintiff is, in fact, disabled. *Id*. at 20-21.

18    Defendant's brief in this court is exactly that – brief – and consists of little more than two

19    pages of argument, much of which is boilerplate. *See generally* Def.'s Mot. (dkt. 20) at 3-5. First,

20    Defendant suggests that the ALJ correctly determined that, by virtue of her past employment as an

21    office manager, Plaintiff's transferable skills included, *inter alia*, "keyboarding[] and operating

22    computer systems." *See* Def.'s Mot. (dkt. 20) at 3-4. Next, Defendant confusingly asserts the

23    application of the doctrine of waiver as to an argument that was supposedly not raised by Plaintiff

24    while, at the same time, stating that "[i]nsofar as Plaintiff appears to rely on her own subjective

25    symptom testimony, or opinions based thereon, the ALJ found it 'not entirely consistent with the

26    evidence.'" *Id*. at 4. Defendant then asserts that the ALJ properly relied on the testimony of the VE

27    to find that very little, if any, vocational adjustment would be required for Plaintiff to transition to

28    other occupations at the sedentary exertional level such as a clerical assistant or a reception clerk,

*United States District Court*
*Northern District of California*

1  and that "[s]ubstantial evidence supports the ALJ's decision and the Court should affirm." *Id*. at 5.

2  Lastly, after noting that, "[a]s a matter of record, the Commissioner disagrees with the credit-as-

3  true rule," Defendant submits that, "[s]hould the Court overturn the agency's decision, the proper

4  remedy is a remand for further administrative proceedings." *Id*. at 5-6.

5          At the outset, the court should note that there is a great deal of disconnect between the

6  point-headings in Plaintiff's brief and the substance of those arguments. For example, Plaintiff's

7  second argument is entitled in a way that leads the reader to initially believe that the ALJ's finding

8  as to Plaintiff's transferable skills contradicts the RFC as formulated by the ALJ; however, the

9  body of that argument, instead, contends that the RFC itself was improperly formulated and is not

10  supported by substantial evidence. *See* Pl.'s Mot. (dkt. 17) at 17-19 (essentially arguing that the

11  RFC is flawed because it failed to account for the fact that Plaintiff is disabled because she cannot

12  use her hands for writing or typing due to her carpal tunnel syndrome, and "[a]s such, Gordon

13  does not have the residual functional capacity to perform clerical work. Therefore, the ALJ's

14  finding is not supported by substantial evidence."). On the other hand, Defendant's brief neither

15  ventures to address the argument that the ALJ's transferable skills finding contradicted the RFC

16  (which it didn't), nor the argument that the RFC was itself flawed and not based on substantial

17  evidence. *See generally* Def.'s Mot. (dkt. 20) at 3-5. In fact, Defendant's brief makes no mention

18  of the RFC at all. *See id*.

19          The court agrees with Plaintiff that the ALJ's formulation of the RFC in this case was

20  flawed and that the limitations included in the RFC – indeed the entirety of the RFC – were not

21  based on substantial evidence. Instead, the court finds that the RFC was based on an improper

22  rejection of Plaintiff's testimony, and on an improper rejection of the well-supported opinions and

23  findings of her treating physicians. By way of a recap, the ALJ determined that Plaintiff is able to

24  lift and carry 20 pounds occasionally, that she is able to lift 10 pounds frequently, that she can

25  occasionally push and pull with her right hand, that she has no limits as to reaching in all

26  directions, that she can frequently use her right hand for handling, that she has no limits as to

27  reaching, handling, or fingering with her right hand, and that she has no limits at all with her left

28  hand. *See AR* at 26-33. This finding flies in the face of the entirety of the body of medical

United States District Court
Northern District of California

1   evidence in the record – as recited above – pertaining to Plaintiff's CTS and its effect on her

2   ability to use her hands. The RFC, as formulated by the ALJ, depended entirely on the opinions of

3   two non-examining consultants, as well as the opinion of an internist, Dr. McMillan, formed

4   during the course of a one-time consultative examination. Had the ALJ credited Plaintiff's

5   testimony, as well as the statements of her treating physicians, the ALJ would have been required

6   to find Plaintiff disabled based on the above-recited portion of the VE's testimony.

7           It should be noted in this regard that medical opinions are "distinguished by three types of

8   physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do

9   not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

10  claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The

11  medical opinion of a claimant's treating provider is given "controlling weight" so long as it "is

12  well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

13  inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §

14  404.1527(c)(2); *see also Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). In cases where a

15  treating doctor's opinion is not controlling, the opinion is weighted according to factors such as

16  the nature and extent of the treatment relationship, as well as the consistency of the opinion with

17  the record. 20 C.F.R. § 404.1527(c)(2)-(6); *Revels*, 874 F.3d at 654.

18          "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

19  state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of

20  Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*,

21  427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted

22  by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate

23  reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see

24  also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating

25  doctor's credible opinion on disability are comparable to those required for rejecting a treating

26  doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough

27  summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof,

28  and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v.*

*Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Further, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (9th Cir. 1995); *see also Revels*, 874 F.3d at 654-55; *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). It should also be noted that greater weight is due to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(c)(5); *Revels*, 874 F.3d at 654. In situations where a Plaintiff's condition progressively deteriorates, the most recent medical report is the most probative. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

As to Plaintiff's pain and symptom testimony, if an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, such as was the case here, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Dodrill*, 12 F.3d at 918 (noting that to satisfy the "clear and convincing" standard, the ALJ must "state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *see also Treichler v. Comm'r, SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014) (noting the "ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse [credibility] determination is based.").

It is unnecessary to determine whether or not the findings and opinions of Plaintiff's treating physicians were contradicted by the non-examining consultants or by the examining consultant, Dr. McMillan, who had opined as to Plaintiff's limitations associated with matters outside of his area of specialization – this is so because the ALJ's stated reasons for giving little weight to the opinions and findings of Plaintiff's treating physicians did not even rise to the standard of specific and legitimate reasons supported by substantial evidence. Indeed, the ALJ's decision is internally contradictory in this regard. The ALJ noted that even before the alleged onset date, Plaintiff was treated for degenerative joint disease in both knees, osteoarthritis in her spine,

United States District Court
Northern District of California

and CTS in both wrists. *See AR* at 27. As of 2015, when Plaintiff felt that the effects of her CTS were worsening, the ALJ noted that her doctors instructed her to wear her immobilization braces "at all times, except when bathing or washing her hands." *Id*. at 28. While noting Dr. Lat's opinion that Plaintiff needed to keep her hands immobilized and that her CTS prevented her from performing certain lifting and twisting actions, and from using the computer or typing (*see* Dr. Lat's opinion, *AR* at 780), the ALJ gave "little weight to these opinions," because of the notion that "they are not consistent with the remainder of the record." *Id*. at 32. To support this conclusion, the ALJ focused on certain isolated snippets from the record, taken out of context, wherein it was reported at one time or another that Plaintiff had, as the ALJ put it, "good overall strength in her hands and wrists, with relatively intact sensation during physical examinations, despite abnormal" nerve conductivity study and the electromyography results. *Id*. at 32. In this regard, the ALJ added that "the record is not clear as to whether the above limitations were actually adopted by the doctor, or whether they were just a reiteration of the claimant's allegations." *Id*. The court finds that the ALJ's explanation for giving "little weight" to Dr. Lat's opinions (that Plaintiff's CTS renders her incapable of typing and that she must keep her wrists immobilized at all times) does not constitute a specific and legitimate explanation supported by substantial evidence in the record. Instead, the overwhelming weight of the evidence supports Dr. Lat's opinions. Accordingly, the court will find, as a matter of law, that those opinions are due to be credited-as-true. By the same token, the court finds that the opinions of the examining and non-examining consultants, which were afforded substantial weight by the ALJ (*see id*. at 32-33), namely Drs. McMillan, Bradus, and Lee – on which the ALJ exclusively based his RFC findings – are contradicted by the overwhelming weight of the medical evidence and, thus, are not supported by substantial evidence.

As to Plaintiff's pain and symptom testimony, a further indication of the internally contradictory nature of the ALJ's written decision is manifest in the fact that while the ALJ faulted Plaintiff's fear of surgery in asserting that Plaintiff "has not sought anything but conservative treatment" for her CTS (*id*. at 32), the ALJ also noted that her physicians had been injecting medicine directly into her carpal tunnel nerves (*id*. at 29) – the court finds that receiving injections

directly into a major nerve is not "conservative treatment." Then, despite using boilerplate language to assert that Plaintiff's symptom testimony is "not entirely consistent with the medical evidence and other evidence in the record," the ALJ confusingly states (in the immediately preceding paragraph) that "the medical record supports that the claimant experiences various musculoskeletal pains, especially in her back, knees, hips, and hands." *Id*. at 31. Putting aside the contradictory manner in which the decision was written, the ALJ's decision also ran afoul of the standard described in *Treichler*, *Smolen*, and *Dodrill*, in that the ALJ failed to identify which portions of Plaintiff's testimony were, or were not, "entirely consistent with the medical evidence and other evidence in the record." In this regard, the ALJ noted that despite having pain, Plaintiff lived in an upstairs apartment requiring the use of stairs (*see id*. at 31), which has no logical relevance to the need to keep her wrists immobilized. The ALJ also made much of the fact that Plaintiff "does her own grocery shopping, and was capable of carrying a bag of groceries," (*see id*.) however, as discussed above, this is a mischaracterization of Plaintiff's testimony because she clearly testified that she recruits her family's assistance in grocery shopping. *See id*. at 69 (Plaintiff grocery shops with help from relatives); *see also id*. at 73-74 (Plaintiff is unable to lift a baby due to hand pain); *id*. at 69-70 (Plaintiff's hands even cause her pain when she's eating); *id*. at 75-76 (Plaintiff cannot do much with her left hand, her right hand is worse than the left, and the condition in both hands is progressively worsening). The ALJ also relied on the fact that Plaintiff can ride the bus in discounting her pain testimony (*see id*. at 31), however the court is unable to imagine any logical relevance to limitations associated with CTS and wrist pain on one hand, and riding a bus on the other hand. Lastly, the ALJ placed reliance on the notion that Plaintiff "enjoyed cooking, and she even hosted a holiday dinner" more than a year before the date of hearing. *Id*. Without any further discussion, the court finds that none of the ALJ's reasoning for rejecting any of Plaintiff's testimony even approaches the clear and convincing standard. Accordingly, because it was improperly rejected, the court finds, as a matter of law, that the entirety of Plaintiff's testimony is due to be credited as true.

//

//

United States District Court
Northern District of California

**Nature of Remand**

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1169 (9th Cir. 2008). A district court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Court of Appeals for the Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an immediate award of benefits is appropriate when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and, (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The second and third prongs of the test often merge into a single question; that is, whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n. 2; *see also Garrison v. Colvin*, 759 F.3d 995, 1021-23 (9th Cir. 2014) (when all three conditions of the credit-as-true rule are satisfied, and a careful review of the record discloses no reason to seriously doubt that a claimant is, in fact, disabled, a remand for a calculation and award of benefits is required).

Here, in light of the above-discussed and improperly discredited medical opinion testimony – that Plaintiff's CTS renders her incapable of typing and that she must keep her wrists immobilized at all times – as well as Plaintiff's improperly rejected pain and symptom testimony, and the VE testimony, the ALJ would clearly be required to find Plaintiff disabled on remand. The VE answered in the affirmative when Plaintiff's counsel asked, "[i]f a person were to be limited to less than occasional use of the right upper extremity for fine and gross manipulation, and I'd be (sic) using the hand, would that preclude all employment?" *AR* at 89. Because the improperly rejected evidence would have squarely placed Plaintiff in this work preclusive category – as opined by the VE – the ALJ would clearly be required to find Plaintiff disabled on remand.

As noted, the court has concluded the ALJ erred when he failed to provide legally

14

1    sufficient reasons supported by substantial evidence for discounting the opinions of Plaintiff's

2    treating sources, as well as Plaintiff's own pain and symptom testimony. The court has also

3    concluded that, in light of the VE's testimony, and after careful consideration of the record as a

4    whole, it is clear that the ALJ would be required to find Plaintiff disabled and to award benefits if

5    this improperly rejected evidence was credited as true. Additionally, the court now finds that the

6    record in this case is such that there is no reason whatsoever to doubt that Plaintiff is in fact

7    disabled. At this juncture it should be noted that in cases where each of the credit-as-true factors is

8    met, it is generally only in "rare instances" where a review of the record as a whole gives rise to a

9    "serious doubt as to whether the claimant is actually disabled." *Revels*, 874 F.3d at 668 n.8 (citing

10   *Garrison*, 759 F.3d at 1021). This is not one of those "rare instances."

11         Also, notwithstanding Defendant's mention of the Commissioner's generalized

12   disagreement with the credit-as-true doctrine (*see* Def.'s Mot. (dkt. 20) at 5-6) ("As a matter of

13   record, the Commissioner disagrees with the credit-as-true rule."), the doctrine constitutes binding

14   authority in this Circuit. In fact, it would be an abuse of discretion for a district court to remand a

15   case for further proceedings where the credit-as-true rule is satisfied and the record affords no

16   reason to believe that the claimant is not, in fact, disabled. *See Garrison*, 759 F.3d at 1021.

17   Needlessly remanding a disability claim for further proceedings can operate to delay much needed

18   income for claimants who are unable to work and are entitled to benefits, often subjecting them to

19   "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on

20   remand." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988). For

21   that reason, the law in this Circuit does not support remanding a case like this for no reason other

22   than to give the Commissioner another opportunity to figure out how to meet his burden. *See e.g.,*

23   *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide

24   the issue again would create an unfair 'heads we win; tails, let's play again' system of disability

25   benefits adjudication."); *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1165 (D. Or. 2015).

26   //

27   //

28   //

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the above-discussed reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

**IT IS SO ORDERED.**

Dated: June 8, 2020

_____
ROBERT M. ILLMAN
United States Magistrate Judge

16